May it please the Court, Teresa Pearson of Miller, Nash, Graham & Dunn, on behalf of the lender appellants in this case. I would like to start out by talking about the Supreme Court's decision on Monday in the U.S. Bank v. Village at Lake Ridge case. Because the unanimous opinion of the Supreme Court set forth what we believe is the proper framework for analyzing the standard of review in this case. There's been a lot of fog about the standard of review and exactly how it should be applied in a case involving a mixed question of law and fact. And what the Supreme Court did was set forth a very clear three-step test. Why is this a case involving a mixed question of law and fact? As I read the bankruptcy court's determination in the district court, it is that when a secured lender buys less than all of the unsecured claims and thereby votes in both classes, that's bad faith. Or at least if the offer is to less than all. Yeah. It doesn't offer to buy them all. That's bad faith. In other words, that's an ulterior motive as the cases have defined it. Isn't that purely a question of law? There's no other set of facts that the district court was balancing here. It just said, and the bankruptcy court said, I find it to be bad faith if you buy less than all the unsecured claims and then vote both as a secured creditor and an unsecured creditor. So why would we review that except de novo? That question is de novo. That's what the Supreme Court said was the first step. What is the proper legal standard to evaluate it under? Isn't that the only issue in front of us? I think so. Your Honor, I think that's exactly what happened in this case. So we do review that de novo, do we not? We do review that de novo. Okay. I'm sorry, then I misunderstood what you were arguing. Okay. So what the Supreme Court said — Well, what the district court said was, is that it thought the bankruptcy court applied the wrong legal standard and that if it were looking at the case under what it thought were the proper legal standard, that there weren't facts to support the bankruptcy court's decision that there was bad faith in this case. But the district court was concerned that the standard of review that this Court set forth in Figter did not allow the district court to review that very legal question that Judge Hurwitz identified, de novo. And we can review — if we can review — and so let me just break it down so that I'm sure I understand your argument. If we can review that question, de novo, we might well still have to say to the bankruptcy court, that doesn't count as an ulterior motive if we disagree, but you can still find other reasons to find bad faith, you just can't use that one. Is that — is that the issue in front of us, isn't it? That is the issue in front of us. On the record of this case, there were no other facts that would indicate bad faith. Well, perhaps, but — perhaps, but the issue, only issue really in front of us, I think, under de novo review, is does that — does what your client did constitute bad faith? And it's undisputed what your client did. That is correct. It's undisputed — well, it's undisputed that failing to offer all the creditors in the class is evidence of bad faith, but it seems to me that the district court had another issue on its mind, and that was how the creditor had to approach the plan. In other words, it seemed as if the district — the bankruptcy court was saying that the creditor's approach to the plan needed to help other debtors or help fellow creditors. And that, to me, is a second basis of the bankruptcy court decision. Now, I guess I'm thinking that that's — and then it's seized upon there's no question failure to offer all the creditors is evidence of bad faith, and it's over. But the focus of the inquiry, it seems, equally problematic. Do you agree? I agree that the bankruptcy court improperly focused on whether the secured lender was required to try to benefit other creditors in the case, and that that was an application of an improper legal standard. Because what this Court said in Figter is that the test for determining bad faith is does the creditor act with an ulterior motive — bad faith, it's a competitor, it is trying to advance an agenda other than its rights as a creditor — or is the creditor trying to protect its interests as a creditor? That's the proper standard. It has nothing to do with third parties. Its interest as an extant creditor, correct? As an existing creditor. In other words, what we know from the Second Circuit case is that if you — if you buy into the bankruptcy to become a creditor and then seek to protect those interests, that might be bad faith. Right. Not the facts in this case, but I agree that is what the Second Circuit case says. Not only that, but Figter said that. Figter said that as well. In fact, Figter contemplated the possibility that a creditor acting in good faith could have an adverse impact on other creditors in certain circumstances. It didn't elaborate on that. That was dicta. But it did contemplate that possibility, because the legal test, the appropriate legal test under Figter for what constitutes bad faith is ulterior motive versus protecting your interest as a creditor. It has nothing whatsoever to do with third parties. And that's where the bankruptcy court went the wrong way on the law. Well, on the inquiry, the law is that the bankruptcy court should have concentrated on the motive of the creditor, correct? Correct. In fact, the bankruptcy court erred as a matter of law by looking at irrelevant facts, impact on third-party creditors, instead of looking at relevant facts, what the creditor indeed did. And where you and I missed each other at the beginning on this is that I think because if we find that the bankruptcy court focused only on irrelevant facts, we probably ought not say what it might have done had there been relevant facts in front of it. There may be no other facts to suggest bad faith, but the bankruptcy court never got there. Correct. Bankruptcy court just said, I find bad faith because you didn't offer to buy everybody's share. If we say that's wrong as a matter of law, it seems to me what we ought to be saying to the bankruptcy court is conduct your analysis without reference to that. You find something else, God bless you, we'll be here to review it later. But I'm not sure the bankruptcy court ruled out all other causes. It just focused only on this one. I think that's correct, because the lender appellants did at trial offer to put on evidence about why they chose to purchase some claims and not others. And the bankruptcy court said, I don't care, I don't want to hear it, I don't think it's important. It really truncated the inquiry right there. The record's very clear. So it seems to me that one can secure an untoward advantage to others, third parties, as long as your motive is pure. I believe that is correct, Your Honor. And it's not bad faith to be selfish. It's just bad faith if your motive isn't pure. That is correct, Your Honor. That is the legal test this Court set down in Fichter and what we believe should be applied. Okay. Now, the difference between this and Fichter, of course, is that there was an offer in Fichter to? Everyone. To everyone. And I'm looking through the case law and I'm trying to find a case, at least at the court of appeals level, in which there was an offer to fewer than everyone and nonetheless, good faith was found, in the absence of any other factors. Do you have one? No. Most of the cases that we have been able to locate that actually address whether all of the creditors were approached or not, it's usually mentioned in passing. It's usually an opinion out of a bankruptcy court. We were hoping that the Monticello Realty case might have gone up in Florida and I'm not sure that it actually was appealed. And my roaming through the bankruptcy court decisions, which is always very pleasant, suggested that at least some courts are on either side of this issue. That is correct. That is correct. Any academic – I'm asking because I've – having done my research, I couldn't find any of this and since you two are the experts on the case, perhaps you can help me. Is there any academic commentary on this issue? Not that's written. I'm aware that Professor Colspierre at the University of Oregon has been following this case and she and Jeff Gershon up in Seattle did a presentation on claims trading that did address this issue at the Northwest Bankruptcy Institute within the last year or two. I know they're closely watching what comes out of this because of the impact that this will have on regular claims trading in Chapter 11 cases because there are a lot of trade creditors, particularly in large commercial Chapter 11 cases, where, you know, you're owed $1,500, $5,000, you're going to get 12 cents on the dollar. You don't want to follow a big Chapter 11 case for that kind of money. So you sell your claim. And there are outfits out there out of New York and other places that buy claims and follow bankruptcy cases, but they're going to be reluctant to buy claims in cases if they don't think they can act to protect those claims. But does the Code contemplate claim trading? It doesn't forbid it, but does it expressly contemplate it? I don't think the language of the Code specifically does, but there are certainly opinions of this Court where they have acknowledged claim trading exists, that they haven't necessarily criticized it, and where this Court has addressed the question of when you buy a claim for less than its par value, how you get to assert it, whether you can assert the full face value of the claim or only what you paid, which the full face value from this Court, I can't remember the name of the opinion, but there's certainly a recognition in the community and even acknowledgment by this Court of how to apply the rules for claim trading, so I would assert that that is something that is a recognized practice. Go ahead. You haven't asked. You know, we do have to figure out what's this mean, good faith, and it's an undefined term, and we're kind of groping. And I think you make a very compelling argument, but you haven't responded to what I think he's going to say. And since you're at the microphone, Pacific Western's counsel testified that he didn't seek to purchase claims that were valued at zero, right? Right. And the claims that he believed were either insider-controlled or would alert that Pacific Western was purchasing them. So if we're talking about bad faith, there's this sort of insinuation that this was sort of sneaky. And since we're talking about motive, do you want to address that? I do. Insider claims don't get to vote and have their votes counted under Chapter 11, so there would be no purpose to buying those claims. There was a lot of concern about the Lee and Associates claims because Lee and Associate was actually a formal agent of the debtor. It had been a broker of the debtor, and it may have had an obligation to take some response with the debtor about that. And I think there was concern not only about that, but also it was simply over the budget. The lender's counsel had been given a budget to pursue purchase of claims. It was over that amount. So I don't think he made very much of that fact. I appreciate that it's over budget, and I should have read that additional fact, because I think that is undisputed. It's in the testimony. Correct. But when we go to this bad faith and we're looking at really a motive, what about this? I don't think you'd be able to respond to the question, this motive that they didn't want to give notice, they didn't want that to be known that they were... I don't think it's evidence of bad faith that you're not telling the universe what your legal strategy is. I don't think that's required in a case. I don't think creditors typically do that in a case. Factor it in? Should it be considered at all? I don't think it should be considered at all, Your Honor. Did the bankruptcy court factor it in? Not to our knowledge. As far as we... No, not at least on the face of its decision. That's correct. What about N. Ray Pleasant Hill's partner's language that says a creditor's conduct in furtherance of his own interest should not result in an unfair disadvantage to other creditors? That is exactly what the legal test may be in the Northern District of Georgia, but it's not what Figter has said that the test is here. Here we look at ulterior motive and it's inapplicable. So the bottom line is we don't have to follow Georgia? That is correct, Your Honor. I'd like to reserve the rest of my time for rebuttal if I may. I just wondered if we needed to put that in here someplace. Go ahead. Thank you, Your Honor. May it please the Court. Doug Paul with the Perkins Coie Firm for Fargadalla, the debtor in the underlying case and an appellee here. The central question I think the Court has already grappled with here is whether the bankruptcy court either committed clear error or applied the wrong legal standard in approaching this decision of designation. In this situation, I think there are other factors. I think with respect, the Court is not looking at the Figter case correctly. I think we should step back and this is not a de novo review situation. I agree that if the Court is going to focus exclusively on whether the bankruptcy court applied the correct legal standard, that would be a de novo review question, clearly. The thing that's a little uneasy here is the thing that hits me in class action claims, for instance, or whether we ought to allow the class to be entered or not. We say it's an abuse of discretion standard, but we say it's an abuse of discretion standard and then we say that if they violate a legal principle, it's absolutely an abuse of discretion. I appreciate your argument that bad faith is a discretionary standard. Since I wrote that decision that she's now referencing, I don't know whether she did it in order to make sure that I kept my P's and Q's or what she did, nonetheless, bad faith is discretion. But if they apply the wrong legal standard, there's no question there's an abuse, isn't it? I think that's correct. And if, in fact, as Ficter laid out, that the mere fact that the creditor purchased additional claims for protecting his own existing claim does not demonstrate bad faith or ulterior motive, which is exactly what it says. It does not by itself. Well, I understand what it says. So the court says it is enough. The bankruptcy court said that's enough. That's the ultimate on bad faith. I think you're overly narrowly reading what the bankruptcy court said. Well, let's look at it a little bit different then. It seems to me that the bankruptcy court, on the other hand, said you've got to worry about the effect of your actions on other creditors and, in fact, was talking about In re Pleasant Hill Partners and its statement. But it seems to me that Ficter is just the opposite. Ficter doesn't say anything about the effect on other creditors. Ficter talks about we're talking about the motive of the creditor. We're not talking about its effect on others. We're talking about the motive of the creditor itself. And isn't that wrong then? The bankruptcy court focused wrongly on the effect on creditors? That isn't correct, Your Honor. I would point you to page 640 of the Ficter decision. When the court finally 640, 640. Okay. Yep. After going through, and it's no surprise that the Ficter court approached that case the way it did. It talked about the history of 1126E. It canvassed the cases. It noted all sorts of data points, this case, that case, all these different types of cases that are all very specific, very peculiar facts. And they're each really limited to their own facts. And at the end of that sort of background, the Ficter court said, at the end of the day, this is really a question left up to the bankruptcy judge. But what if the bankruptcy judge considers an inappropriate factor? So let's assume the bankruptcy judge has seven factors which she looks at and says, I find bad faith. And one of them is that the debtor is Hispanic. We would say that's an improper factor. You couldn't have relied on that. Take it back and try again and see if you would rely on all other factors, whether or not you would still find bad faith. If here, reading Ficter the way Judge Smith suggests, we were to hold that it cannot be bad faith simply because you bought less than the entire unsecured class, which is the only, which is one of the facts on which the district court relied here. Shouldn't we then say, no, that's not an appropriate legal factor or the bankruptcy court? Take it back and if you find other factors, there'll be another appeal and we'll be here to look at it. I think to answer both of your questions at once, the Ficter court, the lesson of the Ficter court is we're not gonna draw those kinds of bright lines. No, but that's my question. So you think Ficter doesn't stand for the proposition that it is not bad faith to purchase claims simply to protect your own position in the bankruptcy? I do not. I do not. So are you talking, it goes on and on, on the one hand this, on the one hand that. And then the case says, in short, the concept of good faith is a fluid one and no single factor can be said to inexorably demand an ultimate result. Nor must a single set of factors be considered. It's always necessary to keep in mind the difference between a creditor's self interest as a creditor and a motive which is ulterior to the purpose of protecting the creditor's interest. That's true. I think that's the whole, that's the, after several pages of. Okay, and, and Judge, Judge Brown below. Are you referring to this? I'm going to refer to that and I would urge the court to keep reading. The court, the bankruptcy court did keep in mind the difference between the creditor acting qua creditor and the, and some ulterior motive. See, this is the problem where I said that it was truncated, forgive me for interrupting counsel, but that's where, I want you to correct me if, if you think I'm missing something. But what the court said is every unsecured creditor was offered the same deal. I'm sorry, he, he said in, in those other cases, every unsecured creditor was offered the same deal by the secured creditor. And that's not what happened here, so I'm not going to consider, I'm not considering that I'm going to have the designation motion. I'm, I'm leaving out the next sentence. And then it says, if your client had offered to buy every claim, including Mr. Munson's, including Mr. Lee's, and including the big ones, that would have been different, but that's not what happened. So that's what I'm looking to, and it seems to me that, that was as far as he went. That was the first event, and that's, you have to put that in the context that it was given. The, the court was being asked to basically cancel the confirmation hearing. We can just deal with as a, as a question of law, the designation issue, because this court, this, this creditor was acting to protect its own secured claim. And, and the, the lender here was making the position, taking the position that, that by, as a matter of law, cannot constitute. But didn't the district court take the position that as a matter of law, it did constitute bad faith, and then it went ahead and designated the votes? No. Because I, as I, as I, this bankruptcy court, I'm sorry. Well, it didn't take the, it didn't take any further evidence on the issue. The district court did not. No further evidence on the issue as to what the motive of the creditor was. Because it said, the fact you didn't buy all the class, or at least try to buy all the class, is all I need to know. The district court did not say that. The district court. Bankruptcy court. We reviewed the bankruptcy court the same way the district court does. The bankruptcy court took six hours of testimony about every aspect of this plan. And you're right, the judge resisted having the lender's counsel take the stand. And it was a, it was a, it was a, it was a, it was a, it was a, it was a, it was a kind of an extraordinary situation in my experience, but, but that was allowed. But the testimony, the testimony was about the plan. The testimony was about whether the plan was fair and equitable, et cetera, et cetera. Well, there was testimony also, again, about the designation issue. Well, but on the designation issue, all, all, all this record tells me is that if the designation doesn't go through and the plan is not confirmed, that it's possible down the road that unsecured creditors might not get paid. Oh. We don't, we don't know whether or not your client will propose another plan slightly more favorable to the bank. That's, that's where, again, I, I, I urge the Court to keep reading Fichter. Because I think Fichter required quite a lot of effort to come to. So you said Fichter requires that, that the unsecured creditors get paid? No, no, no, not at all. Is it 640? I guess I'm trying to figure out what language you want me to look at. Sorry, I'm trying to get back to your question, Your Honor. Please. I want to look at, here the bankruptcy court did exactly that. That's on page 640. That's the question. Yes. Here the bankruptcy court did exactly that. Yes. It decided that teachers, it's not that paragraph. It's applying the test. Now we're in, I think, in a mixed question of law and fact. And the Court says specifically, nor it found did the bank, teachers, seek to purchase a small number of claims for the purpose of blocking the debtor's plan. Right. That's, that's a separate. The facts of Fichter are distinguishable. Well. We all agree. The question is whether or not, as a matter of law, that means that one must buy all the unsecured claims in order not to show bad faith. That's not the lesson. The lesson is that it is, there isn't a bright line here where you're on base. You're safe if you're buying all the claims. That's not, we're not looking for a bright line rule. Fichter doesn't say that's a bright line rule. This is. So you might have other indicia of bad faith. It's a factor. It's one factor. So what you're saying is the Court in Fichter could have designated? Could have. Yeah. Could have. Completely up to its discretion. Absolutely. I think that's. And I think it's the appellate court saying we're just not going to be able to get down into the details. As I understand your position is that the designation decision of a bankruptcy court is unreviewable. I think it's very difficult to define good faith. And that's really the job that I think is the challenge here. Well, I guess you might argue that. But my worry is that the bankruptcy court went at it in the wrong way. And that's why I'm giving you those questions. It seems to me that the bankruptcy court went at it as to its effect on others. And. And rather than the motive of the creditor. And Fichter is all about motive of the creditor. And therefore, it seems the bankruptcy court started out wrong. I'm more than willing to give them the benefit of the doubt if they're going to apply it right. But if they're going to go totally. Which I think they did in this situation on the effect on the creditors. Then they've started out wrong. This is not that. This is. We're supposed to see if the motive of the creditor. Of the creditor itself. Is to do it for. To get someone toward advantage. Or to get something that they shouldn't have gotten. But. Then I think they're again saying. Just failing to offer all the creditors in the class. Is not enough. And the bankruptcy court didn't say that. The bankruptcy court didn't rely just on that factor. But as she was very clear to state. It was a huge factor to her. Forgive me for interrupting. But that's what I would just keep trying to say. When I get over. I've already read you the passages. That convinced me that that sounded like a very truncated. This is what she relied on. But then on ER 245 she says. To me it's a huge factor. So that kind of implies that there was something else. But where do I see the something else? The something else is all of the elements. That all the cross currents and parties. And elements of a bankruptcy case. The interest rate. I mean the fact that this is a full payment case. Something the district court found to be a remarkable fact. And the bankruptcy court did too. It may be a wonderful plan. But the secured creditor is entitled to vote against it. It did. And if absent the designation. The unsecured class is entitled to vote against it. You may have come up with the best plan in the world. But they're entitled to vote against it. Right. I'm having difficulty figuring out what other factor there is here. That the district court relied on. You keep saying the cross currents. It's sort of like you're describing. To be fair. I want to have a chance for you to respond. It sounds like you're identifying other factors the court could have relied upon. And I'm just trying to see if there's any indication in the record that that happened. That those other factors were considered. And I see this place where it says it's a huge factor. It's a huge factor. In a liquidation the court made specific findings. In a liquidation unsecured creditors would get zero. Does that matter? That matters. Because we're really having a secured creditor playing with a return of unsecured creditors. And in particular the unsecured creditors who did not get an offer from this lender. This is a strange question. But why do you care about what unsecured creditors get? Well, maybe it's just an altruistic thing. But this debtor. It's because you want to cram down a plan on the secured creditors. Absolutely. Do you have the standing to come. I ask this without any. The case law doesn't help me. It's just a little strange to say. The real problem with this plan is the unsecured creditors didn't all get bought out. And you're the debtor. And you really don't have an interest in whether they all get bought out. Other than your ability to cram down a plan on the secured creditor. Sure. And Judge Smith is familiar with this from the Lake Ridge case. And have a much larger unsecured class than was present in that case. Which I think was $5,000 or $7,000. And to be fair to you, in FIDR we don't appear to have the unsecured creditors up there either. But it's just a strange circumstance to me. Bankruptcy is an odd environment. Thank you. And there are many statutory and case law, common law, equitable things happening. There are many elements that a bankruptcy court has to manage in dealing with all these folks. And I think that's what the FIDR court was talking about when it said, when all is said and done, they must approach each good faith determination with the perspicacity, I had to go to my thesaurus for this, from the data of its informed practical experience in dealing with bankrupts and their creditors. This is a Let me ask the question we've been asking in a slightly different fashion. Let's assume that the bankruptcy court believed that under FIDR it was required to find bad faith because the entire class wasn't bought. If that bankruptcy court believed that, would they have committed, would she have committed legal error? FIDR does not set a bright line rule for good faith. And I do think that would have been error. Yeah.  I'm saying that let's assume that the bankruptcy court read FIDR and set that bright line rule. Yes. Then she would have committed legal error. I think if this Court is going to focus on whether the bankruptcy court applied the correct legal standard, that's a de novo issue. I agree with that. No, I know it's de novo. I'm asking what's the ultimate answer to the question. Listen to what he's asking you. Yeah. What's the ultimate answer to the question? If the bankruptcy court thought that was the law, that it was automatically bad faith if you didn't buy out the entire unsecured class? I think that would be legal error. I don't think the bankruptcy court did that. In fact, I think the bankruptcy court said it's not per se a violation. Okay. But I understand. Thank you. I appreciate it. Thank you, Your Honor. I appreciate your argument. I don't know if you stopped early. I think you might have. I saved a little bit of time and I will keep it brief. I wanted to respond to two things. First of all, to Judge Smith's question about, you know, how this works in abuse of discretion. And I think this is one of the things that Village at Lake Ridge did for us is in one of the notes, note 7, the court said, in addition, an appellate court must correct any legal error infecting the bankruptcy court's decision. So if the bankruptcy court somehow misunderstood the nature of the arm's-length inquiry, which was the legal test in that case, or if it devised some novel multifactor test for addressing that issue, an appellate court should apply de novo review. So that's true even in a case where they decide that clear error is the ultimate standard to apply to application of law to the facts. If you get the legal test wrong, that's de novo and the appellate courts get to correct it. That's correct. The second thing I wanted to address in counsel's argument was the question of the bankruptcy court's informed practical experience. Because while we appreciate that our bankruptcy courts are very experienced and used to dealing with bankruptcy cases, they do have to make decisions based on evidence and facts in the record. And informed practical experience cannot substitute for a lack of facts in the record. And in this case, trial counsel did ask the bankruptcy court to make findings on issues of good faith and motive, and the bankruptcy court refused to do that. So while we do have findings of fact about things like which claims were purchased and what interest rate was appropriate and so forth, we really don't have findings of fact that can be reviewed on the question of motive in this case. But what about this point where the bankruptcy court says it's a huge factor, and it seems to infer that there were other factors taken into consideration? You heard his response. Do you want to reply? I can't see anywhere in the record where there is a finding of fact that would indicate there was any other factor on motive. While the bankruptcy court may have thought it was a huge factor, I think from this record, it was the only factor. Especially since they didn't make any findings. That is correct, Your Honor. All right. Thank you very much. This case 1635430 is submitted. And thank you, counsel, both of you, for your fine arguments. And we're adjourned for the week. Thank you very much. Thank you.
judges: N.R. Smith, Christen, Hurwitz